### ARTHUR P. SPAULDING v. TOLEDO CONSOLIDATED ST. RY. CO.

1. STATEMENTS OUT OF COURT—OMISSION MAY BE SHOWN TO IMPEACH.

Whenever, on a former occasion, it was the duty of a witness to speak, his silence, or his failure to state the whole truth, concerning a material matter, may be shown for the purpose of impeaching his testimony on the witness stand. Thus, where a witness for the plaintiff in an action for injuries claimed to have been the result of suddenly increasing the speed of a horse car, testifies that he, as conductor of the car, at the time of the accident, was stooping to make a fire in the stove and was thrown backwards by a sudden jerk, and that, upon looking toward the front of the car, he saw the driver with his arm raised as if he had struck or was about to strike the horses, a written statement made by such witness, as conductor, to the street railway company on the day of the accident, imputing plaintiff's injuries to his own negligence in attempting to board the car at the front end while it was moving rapidly, and omitting any reference to incidents above stated, tends to impeach such testimony and is admissible for that purpose.

2. ADMISSION IN COURT DOES NOT RELIEVE IMPEACHING CHARACTER.

The mere fact that a witness on the witness stand admits making statements out of court contrary to statements made in court, or having previously made a written statement which is silent as to certain material facts, which it was the duty of the witness to state, and concerning which he testifies, does not relieve such statement of its character as impeaching testimony.

**3. PRACTICE—TRIAL JUDGE NEED NOT DETERMINE STATEMENTS.**

It is not the duty of the trial judge to determine, as a matter of fact, whether under all the circumstances a written statement, by its silence as to material facts, made by a witness out of court, tends to impeach or does impeach his testimony on the witness stand. That question may properly be determined by the jury.

**4. PRACTICE—ADMISSION OF SUCH STATEMENTS.**

A written statement made out of court which tends to impeach the testimony of a witness on the witness stand, may be admitted as part of his cross-examination or as evidence in behalf of the defendant, and such witness may properly be asked or permitted to explain the omission to state the facts relative to which the report is silent.

ERROR to the Court of Common Pleas of Lucas county.

HULL, J.

This action comes into this court upon petition in error to reverse the judgment of the court of common pleas. Plaintiff below, who is also plaintiff in error, brought his action against the street railway company for damages which he claims he sustained through the negligence of an employee of the street railway company. The one thing complained of here, is the admission in evidence of a certain paper writing on the trial of the case. In order to examine that question it will be necessary to state briefly the facts of the case.

The plaintiff, Spaulding, claimed damages on account of the alleged negligence of the company. It appears from the pleadings and the evidence in the case, that on December 8, 1891, the plaintiff was and had been in the employ of the defendant railway company; on that day, however, he was not at work, but was "laying off," as it is termed. He ran his car early in the morning and then started to go home, still having his uniform on. As he walked along the street a car came up, the cars at that time being moved by horses. Spaulding ran out, without signalling to the car to stop, and the car at the time was moving along at about the ordinary rate of speed, as shown by the evidence, some of the witnesses testifying that it was going as fast as ten miles per hour and others that it was going slower, and it is uncontradicted in the evidence that without signalling for the car to stop, or asking the driver to stop, Spaulding took hold of the handles at the front end of the car and attempted to get onto the car, and while so doing, for some reason, he slipped or fell, so that his foot was caught under the wheel of the car and one of his toes was so injured that it had to be amputated, and others of his toes were somewhat injured. He finally got onto the car and was taken to his destination. What Spaulding complained of in his petition and on the trial of the case was, that just as he was getting onto the car the driver of the horses struck them, either with a whip or with his lines, so that just at that time the horses jumped, on account of the conductor having struck them, and that in that way and on account of this sudden motion of the car, he was thrown down and was injured and that is the negligence which he charges.

The case was submitted to a jury and a verdict returned in favor of the defendant. Motion for a new trial was made, overruled and judgment entered for the railway company. Spaulding testified at the trial and gave his version of the transaction, substantially as heretofore stated, and he called a witness by the name of DeLisle, who was the conductor of the car at the time the accident occurred, and it is upon the

testimony of this witness, or a paper which he wrote or dictated and introduced by way of impeachment, that error is claimed here.

In the admission of the paper it is claimed that the court below erred and that for that reason the judgment should be reversed. At the time of the trial of the case, several years after the injury complained of, DeLisle, the conductor, was not in the employ of the railway company. He says in his testimony, at page 21 of the record:

"When I first see Spaulding I was standing inside of the car, near the front end, going to fix up the fire. There was a stove in the car. I saw Spaulding and another man named Cooley walk out of Lewis' barn on Monroe street. I stooped to make a fire or was in the act of making a fire—I was at the stove anyway—and just about the time I stooped the car gave a sudden jerk which throwed me back."

He tells how far it threw him back and that he was thrown upon the floor of the car. Then he is asked this question:

"Q. How far back did it throw you? A. It threw me so I catched myself with my hand—stretched out my hand and kept myself from falling.

"Q. What did you catch onto with your hand? A. Onto the floor of the car, of course. I was in a stooping position at the time and it threw me back, and to keep myself from falling I extended my hand out, to keep myself from falling—the same as any person would do.

"Q. What did you next obsevre? A. I see that the car dragged like, so that there was something that was not right. I sprang to my feet as quick as possible and opened a little slide over the stove at the door and I seen that the driver had his hand up as though he had struck the horses or was in the act of striking them at the time. I opened the slide and asked what was the matter, and he didn't make any reply. About the same time he was setting up the brakes—as quick as he could recover from his stroke he started to set up the brake and then I see Arthur Spaulding kind of pull himself up on the car. I asked him if he was hurt, and he said 'I should say that I am hurt.' "

On cross-examination, the witness is asked:

"Q. How big a whip did the driver have. A. I never measured it; I don't know whether he had any whip or not; I would'nt be positive whether he had a whip or not. Generally there was a whip on the car; but whether this driver used a whip I could'nt say: but I know he had his hand up when I first noticed him, but whether he had a whip in his hand, or whether just the lines, I could not say; it was just a moment and it was all over."

The witness is then shown the paper to which I have referred, which was finally offered in evidence and objected to by the plaintiff but finally admitted wherein it is claimed that the court committed an error; the witness was asked to look at the paper and tell whose handwriting it was in, and he examined it and testified that it was in his wife's handwriting and that it was a report made to the company by him of this accident. He says, however, that he did not write it, but, as was his custom, his wife wrote it for him at his direction. After the paper was shown to the witness and he admitted that it was dictated by him and went in as his report, it was offered by counsel for the railroad company in evidence, or attempted to be offered in evidence, but it was objected to by plaintiff on the ground that the witness was still on the stand. De Lisle

was then excused and then the offer was renewed. The court then said: "It may be offered in connection with the cross-examination."

In this report, a portion of which will be read later, the witness, who was the conductor, made no mention of the driver striking the horses; the report was entirely silent on that point. When it was offered as a part of the cross-examination of the witness, plaintiff's counsel objected on the ground that it was immaterial, and an attempt to get before the jury the opinion of a man who was in the employ of the Consolidated Street Railway Company at the time and whose interest it was to report that there was no fault on his part in the management of the car.

This report stated that the company was not in fault, or, rather, that Spaulding was; this is the language: "Witness claims that Spaulding at fault for trying to board the car while going at such a rapid speed." By the word "witness" it is conceded was meant De Lisle himself. It was objected by counsel that that expression ought not to be admitted in evidence, that it is his opinion that Spaulding was at fault.

Counsel on the other side then stated that in their judgment it was only material for the purpose of showing that he told one story then and "tells another story now." The court then said, in the presence of the jury, "It is not competent as direct evidence of what did occur. It is not claimed on that ground. I am rather inclined, from the reading of the paper, to change my mind as to the use of it as impeaching testimony. I think I will sustain the objection to it, upon the reading of it." The court, after reading the paper, finally sustained the objection to introducing the paper at that time.

Directly after that the plaintiff rested. Then, the record shows it was admitted by the plaintiff's counsel that the paper marked No. 2 was the report made by Mr. DeLisle to the company. That was the paper in question, and the defendant then renewed its offer of this paper. What the court said about this paper, in the presence of the jury, was also objected to by the defendant as being improper.

The court then said: "I suppose the court can pass upon the question whether it tends to contradict the statement that he made, and only that. I am not clear on that. The question is simply whether the paper, which he admits that he made, whether it is or is not contradictory of the statement that he now makes upon the witness stand. It may be admitted, and that will be a matter for the jury to pass upon—that is, whether the paper should be regarded as a contradiction of the statements that he then made upon the witness stand, would be left to the jury to pass upon, the court holding that if it tended to contradict or if it was in any way inconsistent with his statements upon the witness stand, it might be admitted, although it was not the duty of the court to say to the jury whether or not it contradicted the statements of the witness— but that should be left to the jury."

Thereupon the paper was admitted in evidence. Counsel for the plaintiff then objected to a part of the paper, that is to say, these words: "Witness claims Mr. Spaulding at fault for trying to board the car while going at such a rapid speed," as being the opinion of the witness. Then counsel for the railroad company asked the court to say that so far as it is the expression of the witness himself, or of others, that it is incompetent for that purpose, and defendant's counsel said: "I am offering it to impeach the witness by showing that the story which he then told is not

the same story that he tells now." Then the court instructed the jury in that connection as follows: "Well, I will say to the jury, what I have perhaps substantially said generally, but now, applying it to this paper, that this paper is only to be considered so far as it states any facts in connection with his testimony here upon the witness stand as impeaching testimony, in case you find that the statement of facts made in the paper are different from the statements of facts that he makes upon the witness stand, and only with that view will you consider it."

Counsel for the plaintiff below still objected to the introduction of the paper and excepted to the remarks of the court, and then the paper was admitted in evidence, with these instructions of the court and the admission in the presence of the jury of counsel for the railroad company, that this expression of opinion should not be considered by the jury.

It is urged here that whether this paper contradicted Spaulding or not, was a question for the court; and that that was not a question to be left to the jury at all. If it did not contradict him it is argued, it should be ruled out; if it did contradict him, it should be admitted, and the court must pass upon that as a matter of law. The paper itself was a report made by the conductor on the same day of the accident, December 8, 1891, and after filling out the printed blank which he was supplied with, stating that he was a conductor and the name of the motorman, and answering various questions of that kind, the number of passengers on the car, etc., under the heading of "Statement of the accident or incident in full," appears this: "Mr. A. P. Spaulding, an employee of the company, when going to board car opposite Mr. Lewis's livery barn, missed his footing and fell under the car, the wheel passing over his foot, the result of which is the amputation of one toe. Witness claims Mr. Spaulding at fault for trying to board the car while going at such a rapid speed." That was the statment which the conductor made, in writing, to the company, on the day of the accident and he made it pursuant to his duty as such conductor under the rules of the company, for the information of the company, and as a basis of an adjustment of damages if any damages should be claimed in this case; for, on this same paper, at the head of it, is this language: Under the heading of "Statement of Accident" give all particulars possible. Your report is the "basis of adjustment of damage—if any is done."

In this report he says nothing about being in a stopping posture, fixing the stove in the car. He says nothing about there being a sudden jerk of the car; nothing about getting up and seeing the conductor with his hand raised as though he had just struck the horses, either with a whip or the lines. It is urged by plaintiff in error that the fact that he is silent about these things ought not to be used to impeach him upon the witness stand; that there might have been reasons why he kept silent at that time; that he was not obliged to state all that he knew about this accident; that the fact that he did not state in this report to the company these things, ought not to affect his credit as a witness when he testifies on the witness stand and swears that these things actually occurred. It is urged that you can only impeach a witness by showing that he has made statements out of court contradictory to those made in court, and that the mere fact that he keeps silent, cannot be used as impeaching testimony.

The court left it to the jury, in the end, to say whether or not these statements were contradictory of or inconsistent with his statements in

court; and, in doing that, we think he is sustained by the authorities. In Dilcher v. State, 39 Ohio St., 130, the Supreme Court say, in the fourth paragraph of the syllabus:

"Where the foundation is laid for contradicting a witness, by conduct or statement out of court inconsistent with his testimony upon a material matter, and such conduct or statement is susceptible of different meanings, one of which would be inconsistent with the truth of such testimony, it is admissible in evidence, leaving the jury to determine which is the true meaning, and to exclude such evidence is error."

The court through Judge Doyle, who delivered the opinion, on page 136, say:

"Conduct inconsistent with the testimony of a witness, may be shown as well as former statements thus inconsistent. Certainly Woodyard's proposal, if his services were paid for, to aid in getting Stewart's testimony, was inconsistent with his statement to the jury, that both he and Dilcher know that such testimony would be false, unless such proposal was corruptly made. But the court was not the judge of that. The jury might, when all the facts were given, conclude that Woodyard was honest in that proposal, but corrupt in his testimony.

"If the language or circumstance was capable of different constructions, the jury were to give the right one. The evidence was not to be excluded if in either respect it tended to contradict."

Whether this written statement of the witness DeLisle was inconsistent with his statements upon the witness stand, or tended to contradict them, the court properly left to the jury. The paper shows for itself that he was silent in his report upon the matters mentioned, and silence, when one is under a duty to speak, may be shown as impeaching testimony. Wharton on the Law of Evidence, vol. 1, secs. 553 and 554. Section 553 bears upon the question of the proper way of introducing a paper writing which it is claimed impeaches a witness. The author says:

"When the question is as to former expressions of opinion in writing, it is usually enough if the writing is shown or read to the witness in advance; and then, if the genuineness of the writing is admitted or proved, it can be put in evidence. Whether the contents of such paper can be put to him, or whether it must be first shown to him, has been already discussed."

In section 554, Wharton says:

"Generally, whenever, on a former occasion, it was the duty of the witness to state the whole truth, it is admissible to show that the witness, in his statement, omitted facts sworn to by him at the trial."

The author gives an illustration and quotes from a Massachusetts case. The general principle as laid down by this author and in many of the authorities on the law of evidence is: that where on a former occasion it was the duty of the witness to state the whole truth, it is admissible to show that in such statement he omitted facts which he testified to on the trial. This witness was silent in this written report as to these very material facts, and it seems to us that it was proper for counsel to show that to the jury—that it might well be argued that if these facts were true as he stated, that he would have so stated them in his former report which he made out on the day of the accident, when it was his duty to do so. If he had any explanation to make as to why he did not put these statements into his report, it would have been perfectly proper

to have asked him why it was that he omitted them and to have per-mitted him to explain; but no such question was asked the witness and he did not ask to be permitted to explain.

But it is urged further that this testimony ought not to have been admitted as tending to impeach the witness, for the reason that he admitted making this statement to the railroad company and therefore it did not impeach him, for he did not deny making that statement to the company. But, if a witness on the witness-stand admits making statements out of court contrary to statements made in court, that does tend to impeach him; it is not necessary to call witnesses to prove that he made a contrary statement out of court; if a witness on the witness stand makes one statement and admits that on a former occasion, out of court, he made an altogether different and contrary statement as to these same transaction, it is, of course, not necessary to call a witness to prove that, because he admits it, and the fact that he has stated the same thing in two different ways—one way out of court and another way in court—tends to impeach him.

Gillett on Indirect and Collateral Evidence discusses this question, in sec. 93; and in a note there is this:

"That if the writing is in existence and can be produced, it should be shown to the witness, although it is permissible to submit but a part of it to him; that if he denies its authority, its contents cannot be shown by cross-examination, but only by the production of the letter, that the court may be possessed of the whole; that if the witness admits the authority of the writing its contents can still only be shown by a reading of it; that the writing should ordinarily be read as a part of the case of the cross-examining counsel, but the court may permit it to be read at once."

That is, the court may permit it to be read on cross-examination, but he says the better rule is to read it as a part of the case of the cross-examining counsel; and that is the way it was done in this case. We understand the rule to be that it is proper to show any declarations of a witness out of court that contradict his declarations in court, or are inconsistent with his declarations in court, or to show conduct—as the Supreme Court say in Dilcher v. State, *supra*, inconsistent with his testimony in court— and it seems to us that this witness,—the conductor, having testified, in substance, that he saw the driver with his hand raised as though he had just struck the team; that he felt the jerking of the car just before that, as though the team had just been struck—that being the real gist of the plaintiff's action here, and very important in the case—that it was proper to ask him on cross-examination, if he did not make these statements on the day that the injury occurred; this statement of the accident, to the company, pursuant to his duty under the rules of the company, requiring him to state all the facts—we think that was proper, and when it appeared by the written statement that he said nothing in that paper about the driver striking the horses, that it was proper to offer it in evidence as tending to impeach the witness and his testimony then given upon the witness stand.

In our judgment, this paper might have been admitted as a part of the cross-examination of this witness, or, it was proper to admit it as a part of the case of the defendant when it came to offer its testimony. We think it was proper testimony; that it did tend to impeach this witness, and, therefore, there was no error in the court admitting it.

No other question is made in the case. The case was submitted to the jury upon a charge that is admitted to be fair. There were no objections to the exclusion or admission of any other testimony that it is necessary to notice. The judgment of the court of common pleas will therefore be affirmed.

*Charles E. Sumner* and *H. Van Campen*, for plaintiff in error.
*Smith & Baker*, for defendant in error.